[Civ. No. 16956.   First Dist., Div. One.   Mar. 28, 1957.]

ERIC J. MORTIMER, Appellant, v. OLIVE B. MARTIN et al., Defendants; WILLIAM A. REED II et al., Respondents.

Goldstein, Barceloux & Goldstein, Merton A. Jacobs and Harvey W. Hoffman for Appellant.

Pelton, Gunther, Durney & Gudmundson and William B. Boone for Respondents.

AGEE, J. pro tem.*—Plaintiff appeals from a judgment entered upon an adverse jury verdict in an action for damages for personal injuries.

The respondents (Reed, McCauley and Richard) are partners doing business as Reed and McCauley Food Mart and are the lessees of the premises in question. The owner of the premises, defendant Olive B. Martin, was granted a nonsuit and no appeal was taken from the judgment entered in her favor. Nonsuits were also granted to the sublessees operating various departments and no appeal was taken from the resulting judgments in their favor.

Appellant is a wholesale grocery salesman. On December 3, 1951, about 11:30 a. m., he parked his car at the rear of the store adjacent to the market and started to enter the market by way of the rear doorway. This entry way was customarily used by tradesmen and appellant had been using it at least once every three weeks for over 10 years. A concrete strip runs across the threshold and forms the bottom part of the doorsill. It is 2½ inches wide and its surface is 1 inch above the level of the alley, which adjoins the rear of the premises. At its inside edge it drops down 2¾ inches to the top of a concrete ramp or walkway which is 5 feet long and which descends to the level of the market floor. The total incline from the top to the bottom of the ramp is approximately 10 inches and the maximum deviation from the horizontal is less than 2½ inches to one foot. The ramp was not equipped with a handrail.

Appellant testified that as he was walking down the ramp, he slipped and fell. In his complaint for damages for the injuries thereby sustained, appellant alleged in his charging paragraph: "That defendants were negligent in the following particulars: (a) In keeping an incline entrance to a store in a steep and slippery condition where it was known to defendants that said entrance was commonly used by business invitees and business visitors. (b) In failing to keep said incline clear of mud and water and other slippery substances and permitting water and mud to remain thereon in such a condition as to cause it to be dangerous to persons walking over and upon it. (c) In failing to give plaintiff and other persons any signal or warning of the slippery and dangerous condition of the incline at the time. (d) In failing, after defendants knew the dangerous condition of the in-

*Assigned by Chairman of Judicial Council.

cline, to remove the mud or water or to take such other action as was necessary to remove the dangerous condition in which the incline was.'' The next paragraph of the complaint alleges: ''That said negligence of defendants, as aforesaid, was the proximate cause of the plaintiff slipping and falling upon the incline as aforesaid, whereby he was injured in the respects hereinabove alleges (sic).''

The evidence as to whether there was any mud or water on the ramp was conflicting. There was also evidence which would support a finding of contributory negligence by appellant. Appellant does not question the sufficiency of the evidence to support the verdict as the record was presented to the jury. His contention is that the court erred in refusing to admit in evidence an ordinance of the city of Palo Alto, based upon the Uniform Building Code, which required that ramps shall not have a slope greater than 1 foot in 8 feet and shall be equipped with a handrail if the slope is greater than 1 foot in 10 feet.

The trial court apparently excluded the ordinance on the ground that the handrail requirement only applied to a stairway and this was not a stairway. So far as the requirement of a handrail is concerned, we deem it unnecessary to discuss the point because it was not an issue raised by the pleadings. ''Where negligence is pleaded specially, proof must be confined to the acts pleaded; evidence and instructions relating to acts not specifically mentioned in the complaint are variant and not within the issues.'' (19 Cal.Jur. p. 691.) We have set forth in their entirety the specific acts of negligence claimed by appellant. Nowhere is there any issue raised as to the lack of a handrail.

In *Seamans* v. *Standard Hotel Corp.*, 78 Cal.App.2d 818 [178 P.2d 514], a hotel guest sued the hotel for injuries sustained when she fell while descending a stairway. Her complaint alleged that there was a dangerous drop-off from the level of the patio to the level of the basement corridor, which she was attempting to reach. On the trial, her counsel moved to amend the complaint to add that the hotel negligently failed to illuminate the drop-off. This motion was denied. Judgment in favor of the hotel was reversed on the ground that a second charge in the complaint, i.e., failure to warn guests of the drop-off, was sufficiently broad to cover failure to illuminate, since illumination would be one way of warning. However, the plain implication of the decision is that if the complaint had been confined to the first charge,

evidence of any other defect would have been outside of the issues. This charge was stated by the court to be pleaded as follows (p. 820): ". . . that while plaintiff was descending the steps, leading from the patio into the hotel building, she passed over the perpendicular drop-off which is adjacent to said doorway, and as a proximate result of defendants' negligence slipped and fell headlong and was severely injured; that the defendant negligently 'permitted the said entrance and or doorway and or perpendicular drop-off to be and remain in said dangerous, defective and hazardous condition; . . .' " The second charge was stated to be as follows: "that said defendants at said time and place as aforesaid carelessly and negligently *failed to warn* and advise guests and patrons and business invitees of said hotel among whom was the plaintiff, of the existence and presence of said perpendicular drop-off. . . ." (Emphasis added.) The court states the basis of its ruling at page 824, as follows: "It is true, as defendant asserts, that if specific acts of negligence are alleged, rather than negligence generally, evidence of acts of negligence other than those specifically alleged would be immaterial and not within the issues. Plaintiff made a specific allegation concerning the alleged structural defect in the stairway and doorway, namely, the drop-off, but she made a general allegation as to negligence in failing to warn the guests of the existence of the alleged structural defect, that is, she did not specify in what particular manner defendant failed to warn them. Evidence regarding a structural defect other than the one alleged would have been immaterial and not within the issues, but evidence to the effect that defendant failed to warn the guests of the existence of the alleged defect, by reason of a lack of illumination in a dark hallway, was material and within the issues. A warning that a six-inch step-down exists in a dark hallway just inside an inward swinging door which is at the bottom step of an entrance stairway to a public building might be given in various ways. Illuminating the perpendicular drop-off would have been one way to warn the guests. Plaintiff was not required to designate specifically in her complaint the various ways in which such a warning could properly be given, and then allege particularly as to each kind of warning so designated that defendant failed to give it. Plaintiff's cause of action included a combination of the alleged negligence of defendant in permitting a specifically described hazardous defect in the building to exist and of his alleged

negligence .in failing to warn the guests of its existence. The evidence regarding a lack of illumination was material and within the issues presented by the complaint, and should have been considered by the court.''

We conclude that the absence of a handrail was not within the issues raised by the pleadings and that the ordinance, insofar as it pertains thereto, was therefore inadmissible evidence.

However, the ordinance should have been admitted as to the issue raised by the charge that the respondents were negligent in maintaining the ramp "in a *steep* . . . condition where it was known to defendants that said entrance was commonly used by business invitees and business visitors." (Emphasis added.) The same identical sections of the ordinance involved herein were involved and discussed in *Marshall* v. *Lyon,* 77 Cal.App.2d 905 [177 P.2d 44]. In that case there was a cement ramp descending from the floor of a market to the public sidewalk in front. The ramp was 7 feet, 4 inches, in length and the drop in elevation from the floor of the market to the sidewalk was 12⅜ inches. The slope of the ramp was therefore approximately 1 foot in slightly over 7 feet. The plaintiff therein slid and fell as she was walking down the ramp. The court held that the sections of the Uniform Building Code embodied in an ordinance of the City of Monrovia, which sections are the same as those involved herein, required that the ramp in question should not have a slope greater than 1 foot in 8 feet and that such ordinance was properly received in evidence.

In the instant case the slope was 10 inches in 5 feet or, in the terms of the ordinance, 1 foot in 6 feet. The refusal of the trial court to admit the offered ordinance in evidence was materially prejudicial to appellant and requires a reversal.

Appellant also complains of the failure to give some 15 proposed "usual and ordinary preliminary instructions." We have examined the entire charge to the jury and conclude that there is no merit in any of these complaints. The subject matter in each of these proposed instructions was either adequately covered in the instructions given or properly refused as not being applicable or material to the present case. One exception should be noted. Appellant offered, but the court did not give, the standard instruction on expert testimony. (BAJI No. 33.) However, the only expert

who testified was the physician who treated appellant's injuries and his testimony did not bear upon or relate to the issue of liability. Therefore, appellant was not prejudiced by the failure to give the expert witness instruction.

The judgment is reversed on the ground stated herein.

Peters, P. J., and Wood (Fred B.), J., concurred.

A petition for a rehearing was denied April 26, 1957.